Good morning, Your Honors. May it please the Court, Counsel, my name is Steve Brown. I represent Anthony Mason, who is the Bankruptcy Trustee for the estate of POS Systems, Inc. I would like to reserve a minute of rebuttal, and I will watch your admonishment and keep an eye on the clock here. Your Honors, this case is about the balancing of a commercial landlord's very real rights to collect its rent and enforce its lease against the very catastrophic results that can occur if that landlord, in doing so, takes the law into their own hands, uses the remedy of a lockout, and unilaterally brings about the entire forfeiture of the rest of the lease. That's what happened here. There's a lot of facts throughout this brief, but the real nuts and bolts are pretty simple. In the early morning hours of April 24, 2000, the landlord locked POS out of its space. Of course, the thing is, that occurred after a period of time during which the lessee had said they had cash flow problems and couldn't, could not pay the April rent, had not given any specific date or plan for paying it, were in substantial arrears, and within, I think, six days of being obliged for the May rent, which would have kicked it up again against a security deposit of about $15,000. So why, in light of all of those things, wasn't the breach material? Well, the Arizona Supreme Court gave us a blueprint for determining whether ---- I understand, but I've pretty much gone down the factors. And if you want me to be more specific, I would add, all of those things, assuming that foundation applies, all of the things I just mentioned would tip very heavily on the landlord's side. On your side would be, let's just say, the absence of bad faith. On the other hand, you did have money, apparently, or you said you did, after the lockout, that wasn't used to pay the rent, but rather apparently went to other things. And certainly, I guess, in your favor would be, as you started off, the obvious hardship of the forfeiture. Actually, if you really walk down those factors and apply the facts of this case, you'll see that each and every one of them goes in favor of the tenant, because you have to look at the whole context. A 14-day delay in getting rent after six years of religious performance. There's never been a month's missed rent. Let's say it was 20 years of performance and 10 years of missed rent, 10 days of missed rent. At some point, that sliding scale shows the balances of the equities on both sides here. And just because it's been a long-term relationship and no prior default, is the only real factor that you have to look at? No, ma'am. No. But again, starting with the first factor, the extent to which the injured party is not going to get the benefit of their bargain. Here, it was proved at trial. At that extent, it was 14 days of missed rent. They had a reasonable expectation that the rent would be paid on the 10th. On the 15th, the day after the lockout, the money was there. Full rent, plus costs, plus fees, were offered. Yeah, but you see, the problem is that the lessee never said, you know, look, I'm strapped right now. If you give me until the 15th, I'll pay up. Then you would have had a much more compelling case. Instead of that, they produced financial documents which show, I believe, something in excess of $427,000 in aged payables as of the 10th. And they give no indication that they've got the wherewithal or will use it, even if they have it, to pay rent at any time. So from the landlord's perspective, it's got no hint of the ability to pay or a plan to pay. That's exactly right. And that's the problem that the Bankruptcy Court had. The landlord couldn't have known that the money was there or that they could be compensated by $2,800 in damages. The problem is the standard that the Supreme Court of Arizona set down doesn't rely on what the landlord knew. No, there's nothing objective here. Putting aside the landlord's knowledge, objectively speaking, the lessee gave absolutely no indication of ability to pay or intention to pay at any particular time. Well, they actually did provide assurances across the way that they were going to pay. I agree. They didn't get a specified date. By the same token, what we never saw from the landlord was, you know what, we've looked at your financials now, because if you recall, the last communication between these parties was that the landlord was saying, go ahead, you can send us your financials and we'll consider them as we consider our options. They didn't get those financials and say, you know what, we've looked, we don't think you can do this, that right check better be on the desk by Friday or we're locking you out. There might have been a 17-year-old company saved in those instances. But again, remember the lockout remedy that was chosen here? The landlord had two options. The landlord could have simply filed an FED action. They would have been in court within five days. That's what happened in foundation development. What would have happened? All of this evidence would have come out. There would have been the same evidence that we provided at trial. The court in the FED action would have learned. The money was there. Sure, should the tenant have been more vocal about what they were going to do and when they were going to do it? They didn't. Big mistake. But the whole concept of foundation development is, do we let the forfeiture of long-term commercial leases happen on those kinds of mistakes? Or do we have to impose some kind of equitable and standard on whether we're going to let that happen? The Supreme Court said this was a public policy reason to ensure the stability of commercial leases. If we'd gone to FED, all of this would have come out. The court would have known that the tender would have been there. Well, who knows? I mean, the point is, what's the equity? I mean, the equity is the long-term good record, right? There was a long-term good record. There was $700,000 invested into these premises that had just been paid off right before the lockout. We're dealing with a landlord who had no history with this tenant, no history with this property. They bought the property three months earlier to part some money in a 1031 tax exchange because they were looking for apartment buildings to invest in. They had no real investment in this property. Well, I understand. The purchase price was a pretty sizable investment, just like the tenant had a very sizable investment because they were operating out of there for over six years without a problem. This was not a mom-and-pop widget store. This was a 17-year-old company that had 55 employees put out of work by this precipitous action. Is there any, is there any issue that the State Supreme Court could be asked to rule on that's a legal issue that would guide this case further than the foundation case? The landlord asked that question at the trial level and asked the bankruptcy court to certify the question. The only question asked was, does the foundation development case apply? And the bankruptcy court held, and I think rightly, that the foundation development case does apply. And it's not that difficult to follow that blueprint. Well, unfortunately, in our opinion, she followed that blueprint incorrectly. But I don't think there is an additional question. I think the foundation development case sets the blueprint for how you determine whether a tenant's lease, breach, is significant enough, material enough, to justify a complete forfeiture of the remaining rights under that lease, to go through those factors. Factor two is the extent to which they can be compensated by damages. It was shown at trial, and she specifically found that all we're talking about is 15 days delay. There was a 10% late charge right in the lease. There was interest allowed. It would have come to about $3,000. That's what it would have taken to make this landlord whole. And instead, we wind up with a dead 17-year-old company. 55 people put out of work. There has to be some policy that prevents that. And that's exactly what the Arizona Supreme Court said. Those words, the law abhors a forfeiture. We hear them from our earliest days in law school, but they actually have to mean something. And in this context, the Supreme Court says they do mean something. We're not going to let landlords use that right precipitously. There has to be a significant breach by the tenant, and that's what that case goes through. That second factor is $2,800 to $3,000 of damages. That's what it would have taken. Clearly, it goes in favor of the tenant here. The third factor, forfeiture, not even a question. Nobody's really challenged. On one hand, you've got a delay in rent. On the other, the destruction of a 17-year-old company, $700,000 put into that space, they represented 22,000 merchants nationwide that were without service overnight, the extent of the forfeiture clearly is in favor of the tenant here. The fourth factor, the likelihood that the party failing to perform will cure his failure. Here was a found fact. On the 15th, they had the money and they offered it in full. All costs, all fees were offered. But the trial court chose to ignore that because the landlord wouldn't have known that on the day before when they turned that key and changed the locks. On that day, she found, yeah, they may have cured it all the next day, but as far as the landlord knew, this was going to be an indefinite delay in cure. Well, I defy anybody to look at those facts, the factors in the foundation development case and show where it says, what did the landlord know the extent of the delay was going to be? Again, put it in the context of an eviction action. If instead of locking them out on the 24th, they would have filed an FED action, their rights would have been fully protected. They have an expedited hearing. In Arizona law, they get five days of hearing what happened. What evidence would have been shown? Of course, judge, we're here, just like we showed at trial. Here's our bank statements. We've got the money. We've got a competitor who wants to buy our accounts for $2 to $3 million and is offering to put up a bond. We have all kinds of ways to take care of this issue. Should we have taken care of it before? Absolutely. There's probably not a day goes by that's not going to haunt the principles of this act, but the point is, the forfeiture could have been prevented. If it had been an FED action, they would have had the power to go up to court, show the check, show the offer, and does anybody really think the court would have said, no, we're not going to give relief here. We understand you've been there for six and a half years. We understand you've never missed a month's rent. We understand you're here with the money. But that $3,000, this landlord has a right to rely on their contract. So we're shutting down your business. I think that's exactly the opposite of what the foundation development case was trying to get at. That fact would have been shown in an FED action. Are we really going to hold the landlord to a lesser standard by using the more direct and kind of draconian remedy of choosing a lockout? Because in that case, what you're telling landlords is, you've got carte blanche. If you're lucky enough to lock them out before they can get into court, before they can survive and they die, then you're home free. Because you wouldn't have known at the time of the lockout what those equities might have been. It's the old personal injury lawyer adage about if you bump into somebody, make sure you back up and hit them again and put them out of their misery because a maimed client can cost you a lot more money than a dead one. There has to be, at very least, an equal standard for filing an FED action versus a lockout, if not a tougher standard. When a landlord chooses to do a lockout, that may 24 hours later kill a company, they may not know some facts. And if they're wrong, they have to take that risk on because they had every right to go into court and give that tenant a chance to make that case. And here, what's worse is, they still had the chance. That day after the lockout, there were negotiations between the landlord's counsel and the tenant's counsel. The tenant, Mr. Powell's testimony, specifically decided, we don't have time to get to that hearing, but I'm going to just show up and offer Mr. Fromanek, the counsel for the landlord, the money. How could he not just agree to take the rent? We're going to pay your costs. We're going to pay your fees. You haven't been harmed one whit. But the result was, no, we're refusing that. We don't like your financials. We don't want you as a tenant any further. A landlord shouldn't have that kind of power. And the Arizona Supreme Court said, landlords shouldn't have that kind of power. There has to be a significant material breach to justify a complete forfeiture. And at some point, that tenant has to have their day in court. And if they can't because they died too quickly, then after the fact, we may be looking at those factors. But if they all come down on the side of the tenant like they do here, then there has to be a remedy. There has to be something told to the landlords that they can't take that action without that risk. Unless the court has any further questions, I reserve my time for the panel. All right. Thank you. Good morning, honors. Mr. Brown, I'm Mike Walker. I represent MeerPat LLC. And co-counsel this morning is Dean Formanek. He represents the Douglas Allred Companies and David Allred, who's also in the courtroom here today. I may reserve a little time for Mr. Formanek to speak. Initially, your honors, I'd like to simply address one point that was made in the trustee's reply brief that obviously we were not able to address in writing. And it kind of goes right to the crux of his theory, is that somehow the landlord was assured the rent would be paid. And this post-lockout tender was really a late payment or evidence of a late payment as opposed to a non-payment of rent. The trustee in his brief on page four states that this semantical game is both a distinction without a difference and an irrelevant one under the law. And this is his late payment versus non-payment. He goes on to state, what makes rent failed versus late? Quote, and he says, MeerPat does not dispute the factual findings of the trial court that POS at all times assured MeerPat that it intended to pay rent. Judge Hallowell heard all of the evidence. And we do dispute that particular alleged factual finding and do not believe that was a factual finding of Judge Hallowell. On page 11 of her opinion, Judge Hallowell states, the court finds, therefore, that MeerPat reasonably believed in April 2000 that it was going to be deprived of the benefit it expected under the lease, its rent, for an indefinite period of time. She states on page 13 of her opinion, quote, MeerPat had no way of knowing in April of 2000 how long POS might remain in default of its material obligations to pay rent because POS had done nothing more than give general assurances to MeerPat that it hoped to pay the rent shortly. Given that POS had informed MeerPat that it could not pay the rent, MeerPat had no way of knowing whether shortly meant 15, 30, or 90 days, and whether the rent that would remain unpaid would be the April rent or the rent for future months as well. As you pointed out, Your Honor, the May rent was due in just less than a week. She goes on to say, quote, importantly, however, the evidence did not demonstrate that MeerPat was told that POS had the capacity to pay the full amount of the April rent. So we do dispute the trustee's position that there was some factual finding that MeerPat was assured it would get the rent. Assured, I suppose, can take several different meanings. Possibly, he means assured in the context of the checks in the mail. There were no reasonable assurances, Your Honor. I'm sorry. That's all right. Mr. Brown argues this morning, perhaps more directly than in the brief, that the alternative of filing an FED action would have been more appropriate given the length of the lease and the good record. Well, Your Honor, I take issue with the way that Mr. Brown presented the potential of an FED. But let me initially point out that in Arizona, a commercial landlord does have the right to retake possession. And they also have the option of using a forcible entry and detainer action. Had POS, or had MeerPat elected to use a forcible entry and detainer action, and we showed up in court, kind of like pre-forfeiture, and we showed up in court, and MeerPat had still not paid the rent, had still not tendered the rent, I can tell you exactly what the result would be. It would be judgment in favor of the landlord, and a writ of restitution would have been issued. That's the fact that he omits. Sure, but he argues that they would have had it in hand as they had it in hand, or said they had it in hand the day after the lockout. Well, that's a real problem here, Your Honor. The fact that he omits to tell you is that after the forfeiture was complete, the remedy that the tenant chose wasn't to tender the rent. It filed bankruptcy. It filed bankruptcy the day of the lockout. When this alleged tender was made, it was made in the context of settlement negotiations between Mr. Powell, the attorney for the tenant, and Mr. Formonic, the attorney for the landlord. That's when they attempted to cure. But now, now we're talking about a post-petition payment of a pre-petition debt. The landlord is now faced with a tenant that is in bankruptcy. Any such tender, number one, would have required approval of the bankruptcy court, is always subject to the potential of the avoidance powers. And now we have an automatic stay in place with a tenant that is in bankruptcy. So that's the remedy that the tenant elected. It wasn't to walk up and hand a check to Mearpad. It was to file bankruptcy. Candidly, we learned during the course of discovery that was a remedy that the tenant was thinking about long before the forfeiture actually occurred. They consulted with Bankruptcy Council on April the 7th. And there was testimony between the officers of POS that they'd been discussing bankruptcy amongst themselves for a couple of months. So that's the problem with this alleged post-lockout tender. We dispute that it was a tender in the formal sense of a tender. Certainly, Mr. Powell testified that he and your attorneys' fees, but they're in bankruptcy. That really changes the rule of the game. And the landlord has to look very seriously about how it deals with a bankrupt tenant. They'd already filed the petition when that conversation occurred. Pardon, Your Honor? Had they already filed the petition when they had that conversation? Yes, sir. They filed the petition on April the 24th. And the testimony at trial was that the very first thing they did early in the morning of the lockout was to contact Mr. Powell and instruct him to get a bankruptcy in motion. And he did just that on April the 24th. The actual alleged offer to settle did not take place until the following day after the petitions filed and in effect. And it's in bankruptcy. Is there any issue that could have been framed or could be framed for the Arizona Supreme Court that would illuminate this case? Or is it all just an application of foundation? No, I don't think it's an application of foundation at all, Your Honor. And Judge Martone, who was a former Arizona Supreme Court justice, Judge Martone was our district court judge that held that foundation development doesn't apply in the context of non-payment of rent. He agreed with our position. And if you look at the statute and the way it's drafted and where the comma is in the statute, the statute says when a tenant neglects or refuses to pay rent when due and is in arrears for five days. It says that right the very first part of the statute. Then there's a comma. And then it says, or when tenant violates any provision of the lease. Judge Martone, when he ruled on appeal at the district court level, held that this is really a two-part statute. And foundation development deals with the second part of the statute, which is the or any provision of the lease. When you have a non-payment of rent, that's the first part. And the Arizona legislature says, look, when you haven't paid the rent, the landlord has its remedies under ARS 33361. And what the trustee is really asking you to do is abrogate the statute. That's what he's asking you to do. Arizona Supreme Court did a pretty good job of that already. I mean, the problem is, for your argument, it seems to me that the Supreme Court and foundation equated other conditions, in that case, the common fees, with rent, analogized to rent. And for all that appears from the face of that opinion, it was dealing with rent as well as other provisions. Actually, actually, Your Honor, I disagree with that, respectfully. When you look at the foundation development case, and you look at the way it's drafted very carefully, for example, the first time that they refer to it is the statute is on page 1193 or 442, depending on whether you look at the Pacifics or the Arizona reports. And interestingly enough, when they're quoting the statute, they italicize the word any. They read the statute, and they come to the tenant violates, and then they italicize the word any provision of the lease. And then further on in the opinion, when they talk about any provision, they actually put quotes around any provision section of it. And they also say in there that a nonpayment of rent is a material breach. And it's pretty hard to make a finding that a nonpayment of almost $29,000 worth of rent after two written notices and two verbal notices is anything but a material breach. And that's what Judge Martone found when he found that the statute really deals with the second section of the statute and not the nonpayment of rent. It's pretty clear that when a tenant neglects or refuses to pay the rent, the landlord has its remedy. And also in this case, this particular tenant bargained for a written notice. If you look at the lease, there's an interlineation in the lease that asks for five days written notice before there's a default. The statute doesn't even give you that. Our statute says if it's not paid within five days, you have your remedy under 33-361. This particular tenant bargained for its written notice, which it got. Now another issue, Your Honor, I'd like to talk to you about in the context of what this foundation really and truly mean. And I totally disagree with the trustee and its interpretation and what it's trying to make foundation do. Again, when you look at the opinion and you look at the language and the way the court has drafted it, it constantly throughout the opinion, for example, says prevents judicial consideration of equitable defenses to forfeiture. It goes on to say the proposition that a court cannot provide equitable relief against a statutory forfeiture. Next page, while we will uphold a forfeiture when the breach is significant, we do not believe we should so literally construe. And it says we do not believe Bricker can be read as holding that the statute requires the court to enforce a forfeiture based on a trivial breach. Many other times during the course of the opinion did they talk about enforcing a forfeiture, the allowance of equitable defenses in the context of a forfeiture. Nowhere in this opinion do they allude to the potential of a non-breaching landlord being sued for damages. They're talking about when will we enforce a forfeiture and when won't we enforce a forfeiture. When will we allow equitable defenses to a forfeiture? When won't we? Not turning this whole case and the statute on its heels and find a landlord who doesn't breach its contract, who acts in accord with its contract, who acts in accord with its statutory rights and find itself defending a lawsuit for monetary damages. This landlord or this tenant probably could have done a couple of things. If it truly thought it was entitled to some relief, it could have gone into state court and sought equitable relief from a state court to get an injunction to allow it back into the premises. That certainly was a remedy. But what remedy did it choose? Bankruptcy. Once it chose bankruptcy, it certainly could have gone to the bankruptcy court to see if it could have received equitable relief. But to not do that and then try to turn this into a lawsuit for damages against the non-breaching party, in my humble opinion, doesn't make sense and really doesn't flow in the context of what the court was saying in the foundation case. It's so different from this case. I mean, it was a cam charge. There were notices sent to the wrong address. There was originally a dispute as to the amount. The minute the tenant finally got the notice, it sent the check. The money got there before the forfeiture took place. Here, they told us they didn't have the money to pay the rent. They didn't tell us when they were going to pay the rent. The tenant was insolvent. It had $400 and some odd thousand in aged payables. And interestingly enough, it's an exhibit. If you look at it, a lot of those were to temporary employment agencies. And we learned during the context of this case, when they needed a bunch of employees, they went to temporary employment agencies and they got temporary employees. And when you see that, when the landlord's looking at that, and he sees one after another, gee, what an easy way to get your payroll down. Hire temporary employees and not pay them. Some of those were 90, 120 days out. They didn't pay lawyers. They didn't pay accountants. And one other thing the landlord did know was that it had a $200 and some odd thousand debt for property taxes to Acoustic, which was another one of the tenants in the property. So we have an insolvent intent. This is nothing like the facts in the Foundation Development case. And Judge Hollowell heard all of the facts. Although we adamantly disputed, tried to get it certified to the Arizona Supreme Court to decide whether it even applies a non-payment of rent, listened to everything, applied the Foundation factors. She may not have applied them the way Mr. Brown wanted them to be applied. He has certain facts that he wants applied. And we believe that if you're going to apply them, apply the facts in total. And she found against the tenant in every single one of the elements of the Foundation factors. So we clearly do not believe that Foundation does anything other than provide an equitable relay for a tenant. We believe that 33-361 says what it says. And to hold otherwise in this case would, in essence, be abrogating the statute. It's a 100-year-old statute. And landlords do lockouts every single day in the state of Arizona. And to find non-payment of rent is somehow not a material breach of a lease, is inconsistent with the facts in this case, and would be inconsistent with the statute, ARS 33-361. Before I turn it over to Mr. Formanek, any of you have any questions for me, anything I haven't covered that I don't like? I don't think so. OK. Thank you, Mr. Formanek. I really appreciate your time. It's been fun to be here, actually. Thank you for your argument. Good morning, Your Honors. Dean Formanek, appearing on behalf of the defendant, David Allred, and the Douglas Allred Company. Just very briefly, I'm the attorney that's in the trenches trying to predict what these statutes say, what our rights are, how to do it the appropriate way. And my name's throughout the record here. I've been used today, even. And it drew me back to a quote that's in one of the cases cited in our brief, the Southwest Savings case, where the court stated that a vague standard of good faith will interrupt the predictability that an orderly commerce requires. And that orderly commerce is, when do we have the right under the statute? If they don't pay the entire amount of rent, is that the point that you look at? And once forfeiture occurs, whether through a deed of trust sale and that hammer falls and it's done, does the borrower get to come back in the next day and say, look, I filed bankruptcy, but I want to pay you now? And we're faced in commerce, lenders, landlords, anybody in a credit type of relationship with needing to know what are our rights, and then we'll make decisions based on those rights. And if the ruling is that, as plaintiffs would argue, that, look, if we've been there five years, we should get several months where we don't have to worry about the effect of the remedy that the statute allows. This tenant tells us they don't have the ability to pay the rent, but they misled us. They apparently did have the ability to pay the rent. The record later, the landlord later found out through discovery that they had hundreds of thousands of dollars that they had come in, and they chose to use it for other purposes. Now, we couldn't discover that at the time we were trying to make the decision. And the fact that they come in after the forfeiture occurs and says, now we get it. Now we understand we really need to pay this. It's the wrong point in time to have that be relevant, because a landlord has to make that decision based on the facts it knows, and it should be able to rely upon what a tenant tells it. And that's the big distinction between foundation and the facts of this case. In that case, that tenant, the second it knew, it sent the rent. Here, they knew that they were in default. There wasn't an inadvertence or mistake, and it wasn't trivial, because it was the full amount of the rent. And yet, they chose not to take the money that they apparently had the ability to send over to us, not paying other creditors. I know that would be part of that equation. And they only want to have to pay it after the bad event happens to them, the forfeiture. And if the ruling of the court would be that, OK, full amount of rent, and you can come in after the fact, no tenant will ever pay the rent on time that's in a financially difficult situation. They'll always wait for the forfeiture to occur, and then come in afterwards, because they'd have that right now, because they did pay five years in the past. That would be a vague standard if the court adopted that. And I think that that would hurt commerce. Landlords would look at tenants that are thin financially and say, gosh, now, I guess you get these extra months if you've paid after so many years. They're going to not want to rent to tenants like that as much. And I represent a lot of tenants that don't have good financials. And they need that space, and they put up their half a month's security deposit, and they're very pleased about it. And they know that the law in Arizona, because this is no secret, it's been around forever, we deal with it every day, we realize that that remedy can come down very quick on a tenant. And some of us, when we negotiate those leases, say, gosh, I don't want it to happen without knowing. I'd hate to be gone on a trip, and accounting failed to mail the check. And this tenant did that very thing. They negotiated it. They put in, we want five days written notice before you can exercise that right. So they didn't like the statute. They negotiated for more. And then later, they just didn't like the remedy that was there in Arizona. And to change that would change that predictability. And I do believe the district court, Judge Martone, was correct in distinguishing the statute. You have the failure to pay rent, and you have those other remedies. And Foundation truly fit in the other for a whole myriad of reasons. And I believe that that's the correct ruling. Thank you, unless you have questions. All right, thank you, Mr. Vermont. Mr. Brown. Thank you, Your Honor. Very briefly, the Foundation development case absolutely applies to rent. You've read that case. It likens the cam charge to rent. That case does not, as Mr. Walker said, say that the failure to pay rent is a material breach. What it does say is that rent is a material provision, but that any material provision can still be breached in an insignificant way that it doesn't justify forfeiture. All these facts that the landlord wants to say, we didn't know. They didn't provide us general assurances. They didn't tell us they had the money. All those things they didn't know. That is not relevant, because the same standard has to apply, whether it's FED or whether it's a lockout, because they were given that extraordinary remedy. They wouldn't have known all those things if they filed an FED action either. The point is, the tenant before it died would have had a chance to present all that to a court and let an objective analysis, as Foundation development set forth, go through those factors and say, OK, they didn't pay. They didn't provide you a specific enough assurance, but guess what? They're here now. It's only been 14 days. They're ready with the check. It's only going to cost $3,000 of your lost time, and they'll cover that. In those kinds of circumstances, the tenant would have had that power. No, they wouldn't have known all those facts at the moment they filed the FED action. But what they're wanting you to do is set a different standard for a lockout. It's OK if they get to do it in an FED, but if we lock them out before they have a chance to tell us all those things, then we're home free. I thought the argument was made you couldn't do it in an FED also. Couldn't do what? Present that evidence? Present that evidence that show up after the fact with the evidence. Oh, I think that happened in the foundation development case. In that case, at the time they filed the FED, that camp check hadn't shown up. But by the time of the hearing, it had. The court found that relevant. Look, the cure has already happened. The money's in. The court looked at everything from an objective standpoint. What were the facts at the time this hearing is taking place? The evidence that was presented. They cite, the foundation development case cites Farmer v. Pitts with approval. And it talks about rent, excuse me, applicable to rent cases. It says the court's words in Farmer v. Pitts are quite appropriate for this case. And they quote from Farmer, the writer of this opinion cannot be but impressed with the idea, which seems to come from reading of the record, that it was not the rent the lessor wanted, but rather a forfeiture of the lease contract. That's what this was about. On the 25th of April, somebody was in their offices offering to pay them in full. No harm. They didn't want that money. They wanted their property back. And that's not a right that the landlord should have. The parties are supposed to get the benefits of the bargain. And if there is only an insignificant breach, then the tenant has to get relief. They want to say that it's only applicable to seeking equitable relief from a forfeiture, and that there shouldn't be an affirmative cause of action. Once again, the legislature gave landlord two remedies. In an FED, of course, there would be an opportunity to get equitable relief, because the forfeiture hasn't occurred. The termination has. By filing an FED action, you're saying we're terminating the lease, but the tenant has a chance to come in and state their case and get relief. The problem is the legislature 100 years ago also gave an additional right to lock them out. And the Foundation Development Court said, well, the reason the legislature did that, and they went through the history, they did that because these are property rights that it used to be back in feudal days, the landlord couldn't get rid of you. All you had was damages. This was just giving an additional remedy to the landlord they didn't have before. But that was not to say that they could wield that power in some different fashion than their other remedies. And that's what this case is about. If they could have gotten relief in an FED, that means, the reason that means, is that there was not a material breach. The Foundation Development Court said, this is the analysis to determine if there was a material breach. Well, if there was no material breach under these factors, but the lockout occurred and the tenant's dead, they want to tell you that there is no remedy. But that can't be the case. The landlord has to take on that risk if they're going to use that remedy instead of an FED where somebody would have a day in court. Does the court have anything further? I don't think so, thank you. Thank you, counsel, for the matter just argued will be submitted.
judges: Noonan, Rymer, Gould